UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DARREN CHIACCHIA and
INDEPENDENCE FARM, LLC,

                                        Plaintiffs,

              -vs-                                         11-CV-837RJA(HKS)

CHARLOTTE SCHITKEDANZ,
THOMAS NOWASKY, and
GALTEN FARMS LTD,

                                        Defendants.

_____


APPEARANCES:                 DARREN CHIACCHIA, Springville, New York, Plaintiff
                             *Pro Se.*

                             ALLITHEA E. KILLEEN, ESQ., Orchard Park, New
                             York, Attorney for Plaintiff Independence Farm, LLC.

                             BROWN WESTMORELAND & RICE, PA
                             (ELIZABETH RICE, ESQ.), Orlando, Florida,
                             Attorneys for Defendants.

                             GIBSON, McASKILL & CROSBY, LLP (AMANDA
                             CARMELLA SCHEIBER, ESQ. and TIMOTHY J.
                             GRABER, ESQ.), Buffalo New York, Attorneys for
                             Defendants.


## REPORT, RECOMMENDATION AND ORDER

     This case was referred to the undersigned by order of the Hon. Richard J. Arcara

on December 1, 2011 for all pretrial matters and for report and recommendation on

dispositive motions pursuant to 28 U.S.C. § 636(b) (Item 15).  It is currently before the

court on the defendants' motion to dismiss (Item 22).

**BACKGROUND**

Plaintiff Darren Chiacchia commenced this action with the filing of a *pro se* complaint on October 5, 2011 seeking damages for breach of contract and/or quasi contract, declaratory relief, and an injunction (Item 1).  He alleged that, since 1991, plaintiff Independence Farm, LLC and defendants Schickedanz[1] and Galten Farms had been engaged in a business relationship involving the purchase, training, and sale of horses (Item 1, ¶ 5).  The business arrangement entailed the shipping of horses to plaintiffs by defendants, with defendants paying for the care of the horses by plaintiffs, and the proceeds of the sale of the horses being divided among the parties (Item 1, ¶¶ 6, 12, 13).  Plaintiff alleged that defendants stopped making payments toward the care of the horses in the spring of 2008.  *Id.,* ¶ 7.

On October 13, 2011, plaintiffs filed a motion for a temporary restraining order, seeking to prevent the defendants from removing or threatening to remove any of the horses in plaintiffs' care, custody, and control until the financial responsibilities of the parties had been determined (Item 2).  In a Decision and Order filed October 14, 2011, the court noted that neither the complaint nor the motion had been served on the defendants and denied the plaintiffs' request for immediate *ex parte* relief (Item 4).  In the alternative, the court construed the motion as one for a preliminary injunction and directed that plaintiffs serve the complaint and motion papers on the defendants and file proof of service.  Additionally, the court directed that Independence obtain representation, as the corporate defendant may not appear *pro se.  Id.*

---

[1]  The names of defendants Schickedanz and Nowaskey are misspelled in the complaint and official docket.  The court will use the correct spelling of their names when referring to the individual defendants.

The defendants filed an answer to the complaint on November 21, 2011 (Item 10).  They raised thirty affirmative defenses including, *inter alia,* lack of subject matter jurisdiction and /or supplemental jurisdiction, lack of personal jurisdiction, improper venue, insufficient service of process, failure to state a claim upon which relief may be granted, failure to join necessary parties, statute of limitations, statute of frauds, and the existence of parallel litigation pending in the state of Florida.  *Id.*  Plaintiffs filed proof of service of the complaint on November 29, 2011 (Item 13).

On December 1, 2011, the case was referred to the undersigned (Item 15).  At that time, the plaintiffs advised the court that they were withdrawing the motion for a preliminary injunction.  On December 9, 2011, the defendants filed an amended answer and asserted seven counterclaims - for an accounting, breach of contract, breach of fiduciary duty, return of chattel, conversion, fraud, and unjust enrichment (Item 18).

On December 30, 2011, the defendants filed the instant motion seeking dismissal of the complaint on the grounds of lack of jurisdiction, lack of proper service, improper venue, *forum non conveniens,* failure to state a claim upon which relief may be granted, and abstention (Item 22).  Plaintiffs filed a response to the motion on January 20, 2012 (Item 23).  Thereafter, on January 30, 2012, defendants filed a reply in support of their motion to dismiss (Item 25).  Oral argument on the motion was heard on February 14, 2012.  For the reasons that follow, it is recommended that the motion to dismiss be DENIED.

**FACTS**

In support of the motion to dismiss, defendants have submitted affidavits of defendants Schickedanz and Nowaskey, the pleadings in the Florida litigation (Item 22), and plaintiffs' motion for an extension of time in which to serve the complaint, including an affidavit of Lisa Marong, plaintiffs' bookkeeper and office manager (Item 5).   In her affidavit, Ms. Schickedanz, the director of Galten Farms, stated that she is a Canadian citizen with a legal residence in Ontario, Canada (Item 22, Schickedanz Aff., ¶¶ 1, 3). She stated that she pays no taxes in New York, owns no real property in New York, and does no business in the state.  *Id.,* ¶¶ 4, 6, 7.  She has no bank accounts, does no advertising, and has no employees or offices in New York State.  *Id.,* ¶¶ 10, 11, 12, 14. Galten Farms is a horse breeding farm in Ontario, Canada.  *Id.,* ¶ 19.  It does no business in New York.   *Id.,* ¶ 23.  Ms. Schickedanz stated, to the best of her knowledge, that she has not had any direct business transactions with the plaintiffs in the state of New York.  *Id.,* ¶¶ 16, 17.

Ms. Schickedanz further averred that Galten Farms has sold plaintiffs several horses since the 1990's and that the horses were delivered to Independence Farm in Ocala, Florida (Item 22, Schickedanz Aff., ¶ 34).  She contacted plaintiff Chiacchia by telephone on numbers with a "352" area code, which is the area code for Ocala, Florida.  *Id.,* ¶¶ 36-40.  Ms. Schickedanz stated that, while she visited Independence Farm in Ocala, Florida, she never met with plaintiff Chiacchia in New York in regard to her business dealings.  *Id.,* ¶¶ 44-46.  Most of the events and circumstances giving rise to this action occurred in Florida, and the majority of the witnesses and most of the evidence is in Florida.  *Id.,* ¶¶ 51, 53-54.

4

In his affidavit, Thomas Nowaskey[2] stated that he is an American citizen with a legal residence and a dental practice in the state of Illinois (Item 22, Nowaskey Aff., ¶¶ 3-4, 6).  He does not practice dentistry in New York State, owns no real property, has no office, pays no taxes, does no advertising, and has no employees, bank accounts or operations in New York State.  *Id.,* ¶¶ 10-19.   Dr. Nowaskey stated that he is not an employee, agent, or owner of Galten Farms and does not conduct business on behalf of Galten Farms.  *Id.,* ¶¶ 21, 25.  He has had no direct business transactions with the plaintiffs.  *Id.,* ¶¶ 23-24.

In further support of their motion to dismiss, defendants submitted plaintiffs' papers in support of plaintiffs' motion for an extension of time in which to serve the complaint, including an affidavit of Lisa Marong, plaintiffs' bookkeeper and office manager (Item 5).  Ms. Marong stated that she arranged to have the complaint served by Canadian Process Serving Inc. in Hamilton, Ontario (Item 5, ¶ 2).  She faxed the papers to a Mr. Don Jackson, who reportedly received the papers on October 28, 2011. *Id.,* ¶¶ 3-4.  Mr. Jackson told Ms. Marong that he attempted to serve the defendants at Galten Farms on October 28, 2011, but was told that there was no one present who could accept service of process.  *Id.,* ¶ 9.  Mr. Jackson intended to return to Galten Farms to serve the summons and complaint on October 31, 2011.  *Id.,* ¶ 11.

The affidavits of service completed by Mr. Jackson and filed by plaintiffs indicate that all three defendants were served on October 28, 2011 with a copy of the relevant papers tacked to a "No Trespassing" sign attached to a horse jump barricading the entrance to Galten Farms at 10206 Warden Road in Markham, Ontario, Canada (Item

---

[2]  Defendant Nowaskey is the husband of defendant Schickedanz (Item 18, ¶ 50).

13).  Additionally, Mr. Jackson placed a copy of the papers in the roadside mailbox at the address.  *Id.*  Mr. Jackson ascertained that both defendants Schickedanz and Nowaskey reside at the address through conversation with two employees at Galten Farms and by the defendants' names on the mailbox.  *Id.*

In opposition to the motion, plaintiffs' have submitted affidavits of Darren Chiacchia, Lisa Marong, and Donald Holland (Item 23).  Plaintiff Chiacchia stated that his permanent address is in Springville, New York, but that he works in Florida during the winter horse show season (Item 23, Chiacchia Aff., ¶¶ 1, 6).  He stated that he has met with defendant Schickedanz on horse-related business matters "multiple times" in New York, as well as in Canada, Florida, and Illinois.  *Id.,* ¶ 11.  Plaintiff stated that he files federal taxes as a New York resident, and Independence has always filed its taxes in New York.  *Id.,* ¶ 14.  The business bank account for Independence is through the M&T Bank branch in Springville, New York.  *Id.,* ¶ 16.  Plaintiff Chiacchia also stated that he is aware that defendant Schickedanz "maintains and conducts continued breeding, training and sale relationships with others in New York."  *Id.,* ¶ 25.

Donald Holland stated that he worked with plaintiff Chiacchia for 13 years in various aspects of Chiacchia's horse business (Item 23, "Holland Aff." ¶ 2).  He had "frequent and substantial" contact with defendant Schickedanz and "was present upon occasions when Charlotte was here in New York on matters relating to her horses."  *Id.,* ¶¶ 5, 7.

Lisa Marong stated in an affidavit that she is a defendant in the Florida action commenced by Ms. Schickedanz (Item 23, "Marong Aff." ¶ 1).  She has a home-based business in East Aurora, New York which provides bookkeeping and accounting

6

services to a variety of local clients, including Independence Farm.  *Id.,* ¶ 3.  Part of her

duties is to invoice all Independence customers on a regular basis.  *Id.,* ¶ 7.  Ms.

Marong billed defendant Schickedanz in approximately May 2009.  The last payment

was a check from defendant Nowaskey.  *Id.,* ¶ 8.  Soon after, Ms. Schickedanz visited

her horses at Knox Farm in East Aurora, New York and met with her and Mr. Chiacchia

to discuss various aspects of the business relationship.  *Id.,* ¶ 9.[3]  Shortly after that visit,

Ms. Schickedanz sent another load of horses to Knox Farm, some driven by plaintiff

Chiacchia, and another driven by an employee of Galten Farms.  *Id.,* ¶¶ 11-12.  Ms.

Marong routinely billed the defendants for the shipping of horses from Florida to New

York, and all business banking was done in Springville, New York.  *Id.,* ¶ 13.  Ms.

Marong took business calls from Ms. Schickedanz at her East Aurora home office and

keeps all business records from Independence Farm in East Aurora.  *Id.,* ¶¶ 14-17.  Ms.

Marong has met with defendant Nowaskey and has discussed the transport of horses

from Galten Farms.  *Id.* ¶ 28.  Ms. Marong is aware that Galten Farms does business in

New York with other horse farms, including an important sale of a horse to a farm in

Middleport, New York.  *Id.,* ¶¶ 29-32.

Plaintiffs also submitted copies of agency agreements in which defendants

Schickedanz and Nowaskey authorized Jack Brucato to serve as an agent in all matters

relating to certain horses in the care of Darren Chiacchia of Independence Farm,

referencing both the Ocala, Florida and Springville, New York locations (Item 23,

Marong Aff., Exh. C).

---

[3]  Mr. Chiacchia has a contractual relationship with the New York State Office of Parks and
Recreation to operate a horse riding and training facility at Knox Farm (Chiacchia Aff. ¶ 31).

In October 2011, Charlotte Schickedanz and Galten Farms Ltd., amalgamated

as Wagema Holdings Limited[4], prepared a motion for a temporary injunction and a

complaint for replevin in the Circuit Court for Marion County, Florida naming Darren

Chiacchia and Independence Farm as defendants.  Apparently, Ms. Schickedanz and

Galten Farms were unable to serve Mr. Chiacchia.  Thereafter, on November 2, 2011,

Ms. Schickedanz and Galten Farms filed a complaint in the Circuit Court for Marion

County, Florida alleging breach of contact and naming Darren Chiacchia, Independence

Farm LLC, and Lisa Marong as defendants.  Service of process was effected on

November 4, 2011 in Florida (Item 22, att. 5).  In the Florida action, Ms. Schickedanz

accuses Mr. Chiacchia of improperly breeding Galten Farms horses, keeping more than

his share of the proceeds of the sale of Galten Farms horses, and taking wrongful

possession of several Galten Farms horses.   *Id.*

## DISCUSSION

### I. Personal Jurisdiction

"Jurisdiction to resolve cases on the merits requires both authority over the

category of claim in suit (subject-matter jurisdiction) and authority over the parties

(personal jurisdiction), so that the court's decision will bind them." *Ruhrgas AG v.*

*Marathon Oil Co.*, 526 U.S. 574, 577 (1999); *Metropolitan Life Ins. Co. v.*

*Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996); *Hubbard v. Kelley*, 752

F.Supp.2d 311, 315 (W.D.N.Y. 2009.).  Personal jurisdiction "is concerned with the

---

[4] According to the defendants, Galten Farms, Ltd. was incorrectly sued.  The proper defendant should be "Wagema Holdings Limited, carrying on business as Galten Farms, Ltd."

8

relationship of a given defendant to the particular geographic area in which a case is brought." *U.S. ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd.*,110 F.3d 861, 864 (2d Cir. 1997); *Metropolitan Life Ins. Co.*, 84 F.3d at 566.[5]

Defendants challenge the court's exercise of personal jurisdiction in New York State.  Once a defendant has raised a jurisdictional defense in a Rule 12(b)(6) motion to dismiss, the plaintiff bears the burden of proving sufficient contacts with the relevant forum to establish jurisdiction over each defendant. *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994).  Prior to discovery, a plaintiff may carry this burden "by pleading in good faith ... legally sufficient allegations of jurisdiction, i.e., by making a 'prima facie showing' of jurisdiction." *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.,* 902 F.2d 194, 197 (2d Cir. 1990)).  Where, as here, the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor.  *See Whitaker v. Am. Telecasting, Inc.,* 261 F.3d at 208.  Additionally, the plaintiff must satisfy its burden with respect to each defendant separately. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n. 13 (1984) (citing *Rush v. Savchuck*, 444 U.S. 320, 332 (1980)).  Thus, to determine whether personal jurisdiction exists over the non-domiciliaries in this case, the court must determine whether the plaintiff has shown that each defendant is amenable to service of process under the

---

[5]  Defendants do not contest the court's subject matter jurisdiction under 28 U.S.C. § 1332(a). Plaintiffs are residents of New York State (Item 23), while defendants Charlotte Schickedanz and Galten Farms are residents of Canada and defendant Thomas Nowaskey is a resident of the State of Illinois (Item 22).  Plaintiffs seek payment of $902,965.90 on their first cause of action and compensation in the amount of $717,715.65 on their third cause of action (Item 1, ¶¶ 10,18).  Accordingly, the matter in controversy exceeds $75,000 and diversity jurisdiction is proper.

forum state's laws; and second, it must assess whether the court's assertion of jurisdiction under these laws comports with the requirements of due process. *Savin v. Ranier*, 898 F.2d 304, 306 (2d Cir. 1990).

Personal jurisdiction is either specific or general. Specific jurisdiction exists when "a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984). A court's general jurisdiction, on the other hand, is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts. *Helicopteros,* 466 U.S. at 414 n.9. Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's "continuous and systematic general business contacts." *Helicopteros,* 466 U.S. at 416; *see also Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 481 n. 3 (3d Cir. 1993); *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 380-81 (9th Cir.1990), *rev'd on other grounds*, 499 U.S. 585 (1991); *Donatelli v. National Hockey League*, 893 F.2d 459, 462-63 (1st Cir. 1990); *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987).

### A. General Personal Jurisdiction

General personal jurisdiction under New York law requires either defendants' presence in New York or evidence that they are "doing business" in New York. *See Wiwa v. Royal Dutch Petroleum Co.,* 226 F.3d 88, 95 (2d Cir. 2000); N.Y.C.P.L.R. § 301. As none of the defendants in this matter are domiciled in New York, general

personal jurisdiction requires a finding that defendants are "doing business" in New York.  In assessing whether jurisdiction lies against a foreign corporation, courts rely on a traditional set of indicia, for example, whether the company has an office in the state, whether it has any bank accounts or other property in the state, whether it has a phone listing in the state, whether it does public relations work there, and whether it has individuals permanently located in the state to promote its interests. *Wiwa,* 226 F.2d at 98; *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir. 1985).  Here, there is no evidence that the defendants have a license to do business in New York, or any employees, offices, bank accounts, or property in New York.  It cannot be said on this record that defendants were "engaged in continuous, permanent, and substantial activity in New York."  *Wiwa,* 226 F.3d at 95 (internal quotation marks omitted); *see also Landoil Resources Corp. v. Alexander & Alexander Services, Inc.*, 565 N.E.2d 488, 490 (N.Y. 1990) ("The court must be able to say from the facts that the corporation is 'present' in the State 'not occasionally or casually, but with a fair measure of permanence and continuity.'").  Accordingly, the court finds that defendants were not "doing business" in New York for purposes of N.Y.C.P.L.R § 301 and personal jurisdiction over defendants must arise from specific personal jurisdiction.

### B. Specific Personal Jurisdiction

N.Y.C.P.L.R. § 302, New York's "long-arm statute," allows personal jurisdiction over non-domiciliaries whose actions have a substantial impact within the state.  For instance, a court may exercise personal jurisdiction over a defendant who "transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y.C.P.L.R § 302(a)(1).  New York courts evaluating jurisdiction under section

302(a)(1) look to both the language of the statute and the relation between the alleged

conduct and the cause of action. "To determine the existence of jurisdiction under

section 302(a)(1), a court must decide (1) whether the defendant 'transacts any

business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a

business transaction." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir.

2007); *Deutsche Bank Sec., Inc. v. Montana Bd. Of Invs.,* 850 N.E.2d, 1140, 1142 (N.Y.

2006).  N.Y.C.P.L.R. 302(a)(1) does not specify what constitutes a transaction of

business, so the defendant's actions are considered in their totality. The transaction, at

minimum, must be a purposeful act by which the defendant avails itself of the benefits

and protections of New York's laws.  *Longines-Wittnauer Watch Co. v. Barnes &*

*Reinecke, Inc.*, 209 N.E.2d 68, 72 (N.Y. 1965).  "As for the second part of the test, a

suit will be deemed to have arisen out of a party's activities in New York if there is an

articulable nexus, or a substantial relationship, between the claim asserted and the

actions that occurred in New York." *Best Van Lines,* 490 F.3d at 246 (internal quotation

marks and brackets omitted).

     The question of whether an out-of-state defendant transacts business in New

York is determined by considering a variety of factors, including: (i) whether the

defendant has an on-going contractual relationship with a New York corporation; (ii)

whether the contract was negotiated or executed in New York and whether, after

executing a contract with a New York business, the defendant has visited New York for

the purpose of meeting with parties to the contract regarding the relationship; (iii) the

existence of a choice-of-law clause in any such contract; and (iv) whether the contract

requires franchisees to send notices and payments into the forum state or subjects

them to supervision by the corporation in the forum state.  *Agency Rent A Car Sys., Inc.*

*v. Grand Rent A Car Corp.,* 98 F.3d 25, 29 (2d Cir. 1996) (internal citations omitted).

Although all are relevant, no one factor is dispositive. Other factors may also be

considered, and the ultimate determination is based on the totality of the

circumstances.  *Agency Rent A Car,* 98 F.3d at 29; *CutCo Indus., Inc. v. Naughton,*

*Group, Inc*., 806 F.2d 361, 365 (2d Cir. 1986).

Based on the record, it is unclear where the business contract between the

parties originated.  Their business dealings go back to the 1990's and the parties do not

appear to have ever executed a formal, written contract.  It is disputed by the parties

whether defendant Charlotte Schickedanz visited New York for the purpose of meeting

with plaintiff Chiacchia regarding their business relationship.  In his affidavit in

opposition to the motion, plaintiff Chiacchia stated that he  "met Charlotte on business

matters multiple times here in New York." (Item 23, Chiacchia Aff., ¶ 11).  In contrast,

defendant Schickedanz stated, "I never met with Darren Chiacchia in New York in

regard to our business dealings." (Item 22, Schickedanz Aff., ¶ 46).  Donald Holland,

one of plaintiffs' employees, stated that he has been present upon occasions when Ms.

Schickedanz was in New York on matters relating to her horses and characterized his

contact with her as "frequent and substantial." (Item 23, Holland Aff., ¶¶ 5, 7).

Additionally, Lisa Marong, plaintiffs' bookkeeper, stated that in approximately May 2009,

Charlotte Schickedanz "visited her horses at Knox Farm in East Aurora, New York and

met with me and Darren to discuss various aspects of the business relationship." (Item

23, Marong Aff., ¶ 9).

Construing the jurisdictional allegations and resolving doubts in plaintiffs' favor, plaintiffs have satisfied the requirements of the long-arm statute. The record indicates a long-standing and continued contractual relationship with a New York entity for the care and sale of horses, in both New York and in Florida.  An invoice dated April 1, 2009 shows five horses being transported from Ocala, Florida to New York (Item 23, Marong Aff., Exh. A).  The invoice is sent from Independence Farm in East Aurora, New York to the defendants in Markham, Ontario.  This invoice was paid with a check from the account of defendant Nowaskey. *Id.*  Another invoice lists twelve other transports of horses from Ontario to New York and New York to Florida in various months of 2009. *Id.*, Exh. B.  The record further reflects that the Ms. Schickedanz occasionally visited New York to see the horses and confer with plaintiffs regarding various aspects of the business relationship.  Additionally, defendants Schickedanz and Nowaskey both signed agreements allowing Jack Brucato to serve as an agent in all matters relating to certain horses in the care of Darren Chiacchia of Independence Farm, naming both the Florida and New York locations (Item 23, Marong Aff., Exh. C).  Accordingly, all defendants knew that Galten Farms horses spent time at the New York location of Independence Farm and that defendants had contracted with a New York entity.[6] Moreover, there is an articulable nexus between the business relationship and the cause of action being sued upon.  Accordingly, jurisdiction is proper under New York's long-arm statute.

---

[6] Defendant Nowaskey disputes that he played any role in Galten Farms' business.  Based on the payment of at least one invoice by Nowaskey and the agency agreement showing his ownership of a horse in plaintiffs' care, the court finds that plaintiffs have satisfied their burden of showing the transaction of business in New York on the part of all defendants, including Nowaskey.

### C.  Due Process Considerations

As the court has concluded that the exercise of personal jurisdiction is authorized by state law, it must next determine whether the exercise of jurisdiction over a given defendant would comport with the constitutional guarantee of due process.  The due process inquiry has two parts: whether a defendant has minimum contacts with the forum state and whether the exercise of jurisdiction is reasonable under the circumstances of a particular case.  *Wiwa*, 226 F.3d at 99.  Defendants correctly argue that "merely contracting with an out-of-state party does not establish sufficient minimum contacts."  *Reynolds Corp. v. Nat'l Operator Servs.*, 73 F.Supp.2d 299, 304 (W.D.N.Y. 1999).  The court must evaluate prior negotiations, contemplated future consequences, the terms of the contract, and the parties' actual course of dealing.  *Id., citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

In this case, defendants have more than a "mere contract" with a New York corporation.  Where the defendant "deliberately" has engaged in significant activities within a State, *Keeton v. Hustler Magazine, Inc.*, supra, 465 U.S., at 781, or has created "continuing obligations" between himself and residents of the forum, *Travelers Health Assn. v. Virginia*, 339 U.S., 643, 648 (1950), he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.  *Burger King*, 471 U.S. at 476.  Here, the defendants created continuing obligations when their horses were being transported to and from New York and cared for in both Florida and New York, and defendants were paying for this transportation and maintenance.

15

Finally, it is the burden of the defendants' to persuade the court that jurisdiction is unreasonable.  *Burger King*, 471 U.S. at 477.   To determine whether the assertion of jurisdiction is reasonable, the court looks to five factors: 1) the burden on the defendant of litigating away from home; 2) the interest of the forum state; 3) the plaintiff's interest in obtaining relief; 4) the interest of the interstate judicial system in official dispute resolution; and 5) the shared interest of the several states in furthering fundamental social policies.  *Id.; World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292 (1980).

Defendants contend that New York is an unanticipated and inconvenient forum. They argue that it would be a great burden and expense for defendants to litigate this case in New York as the majority of defendants' witnesses are in Florida, some of these witnesses are expected to be uncooperative and unwilling to appear in New York, and defendant Schickedanz has family in Florida and could stay with them during the course of the litigation.  It appears that witnesses and evidence will be located in New York, Florida, and Ontario.  The parties will be equally inconvenienced by the necessity of trying the case in either location.  Given the plaintiff's domicile in New York and defendants' domicile in Ontario and Illinois, defendants have not shown that the exercise of jurisdiction in New York is unreasonable.  Accordingly, plaintiffs have sustained their burden of establishing specific personal jurisdiction and therefore, it is recommended that the motion to dismiss for lack of personal jurisdiction be DENIED.

## II. Venue

Fed. R. Civ. P. 12(b)(3) requires dismissal of a complaint when it is filed in an improper venue. When venue is challenged by defendants, plaintiffs bear the burden of proving that venue is proper. *Kirkpatrick v. Rays Group*, 71 F. Supp. 2d 204, 212 (W.D.N.Y. 1999) (*citing Schomann Int'l Corp. v. Northern Wireless, Ltd.*, 35 F. Supp. 2d 205, 212 (N.D.N.Y. 1999)).  Pursuant to 28 U.S.C § 1391, venue is proper in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) if there is no district in which an action may otherwise be brought as provided in this section, "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."  28 U.S.C. § 1391(a)(3).  It is likely that a substantial part of the events or omissions giving rise to the claim occurred in New York as evidenced by the transaction of business in New York State.  Alternatively, as the court has already established that plaintiffs have met their burden of establishing personal jurisdiction over the defendants, venue in this district is proper.  Therefore, it is recommended that the motion to dismiss on the basis of improper venue be DENIED.

## III. Service of Process

Fed. R. Civ. P. 4(f) governs service of process on an individual in a foreign country and provides that service may be effected (1) by any internationally agreed

means of service that is reasonably calculated to give notice, such as those authorized

by the Hague Convention on the Service Abroad of Judicial and Extrajudicial

Documents; (2) if there is no internationally agreed means, or if an international

agreement allows but does not specify other means, by a method that is reasonably

calculated to give notice, or (3) by other means not prohibited by international

agreement, as the court orders.  Rule 4(h) provides that service upon a foreign

corporation shall be effected in any of the manners prescribed for individuals under

Rule 4(f), with the exception of personal service.  *See* Fed. R. Civ. P. 4(h)(2).

Defendants raise several objections to the service of process in support of their

motion to dismiss.  Specifically, they state that a single packet of documents may have

been left for all three defendants, that defendant Nowaskey is a resident of Illinois and

thus service could not be effected upon him in Canada, that Galten Farms is registered

to do business as "Wagema Holdings Limited" with a different address for service of

process, that Charlotte Schickedanz "was not personally served as an individual or

agent/director for Galten Farms," that the defendants were all misidentified on the

summons and complaint, and that the attempted service did not comply with the Hague

Convention or the service of process rules for Canada.

The affidavits of service filed by plaintiffs indicate that the summons and

complaint was personally delivered to all three defendants at the Warden Avenue

address of Galten Farms.  The process server determined that all three defendants, the

two individuals and the corporate defendant, were located at the address, and left a

copy of the documents tacked to a horse jump blocking the driveway and a copy in the

mailbox.

Failure to strictly comply with the provisions of the Hague Convention does not automatically lead to the conclusion that service is insufficient. *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 301 (2d Cir. 2005); *Garg v. Winterthur,* 525 F.Supp.2d 315, 322 (E.D.N.Y. 2007). Indeed, the Hague Convention "should be read together with Rule 4, which 'stresses actual notice, rather than strict formalism.'" *Burda Media,* 417 F.3d at 301 (quoting *Fox v. Regie Nationale des Usines Renault*, 103 F.R.D. 453, 455 (W.D.Tenn. 1984)). Thus, where the plaintiff made a good faith attempt to comply with the Hague Convention, and where the defendant received sufficient notice of the action such that no injustice would result, the court may deem service of process properly perfected. *Burda Media*, 417 F.3d at 301; *see also Lemme v. Wine of Japan Import, Inc.,* 631 F.Supp. 456, 464 (E.D.N.Y. 1986) (finding service sufficient where the defendant had actual notice of the existence of the proceeding against it although only the summons was translated into the recipient's native language).

Defendants have not specified what, if anything, about this service does not comport with the Hague Convention or the laws of the province of Ontario. Even assuming that a single packet of documents was left for all three defendants, and there is no indication that it was, defendants do not specifically state why this would be improper. The affidavit of service indicates that defendant Nowaskey resides at the Canadian address as evidenced by his name on the mailbox, thus service of process on him personally in Canada would appear to be proper. As for the misspellings and misidentification of the defendants, such defects that cause no prejudice to the defendant are mere irregularities. See *Alston v. Quik Park Garage Corp.,* 1996 WL

547018, *1 (S.D.N.Y. September 26, 1996) (summons and complaint had defendant's name misspelled; however, defendant requested three extensions to answer the complaint and engaged in settlement negotiations with plaintiff. The court found the misspelling a "harmless error.").  The fact that the defendants received the summons and complaint, had actual notice of the action, and answered in a timely manner indicates that any defects in service were not prejudicial.  In the absence of specific arguments or citations to the Hague Convention and/or Canadian law, the court will assume that service of process by a Canadian process service company was effected according to the laws of Canada.  Accordingly, it is recommended that the motion to dismiss for failure to properly serve the defendants be DENIED.

## IV. *Forum Non Conveniens*

The doctrine of *forum non conveniens* is based on the principle that "'a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute.' " *Norex Petroleum Ltd. v. Access Indus., Inc*., 416 F.3d 146, 153 (2d Cir. 2005) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947)).  Notwithstanding the propriety of the action in a particular district, under the doctrine of *forum non conveniens*, "dismissal will ordinarily be appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249 (1981). The *forum non conveniens* determination is committed to the sound discretion of the trial court. *Id.* at

257.  "It may be reversed only when there has been a clear abuse of discretion; where

the court has considered all relevant public and private interest factors, and where its

balancing of these factors is reasonable, its decision deserves substantial deference."

*Id*.

In exercising its discretion on a motion to dismiss based on *forum non*

*conveniens*, the court applies the three-step analysis outlined in *Iragorri v. United*

*Technologies Corp.,* 274 F.3d 65, 73-74 (2d Cir. 2001) (*en banc*):

> At step one, a court determines the degree of deference properly
> accorded the plaintiff's choice of forum. At step two, it considers whether
> the alternative forum proposed by the defendants is adequate to
> adjudicate the parties' dispute. Finally, at step three, a court balances the
> private and public interests implicated in the choice of forum.

*Norex,* 416 F.3d at 153 (internal citations omitted).  As explained in *Iragorri,* when

reviewing a motion to dismiss for *forum non conveniens*, there is an assumption that

plaintiff's choice of forum will be sustained unless the defendant can demonstrate that

reasons exist to afford plaintiff's choice less deference.  *Iragorri,* 274 F.3d at 70-71.  In

fact, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of

forum should rarely be disturbed." *Gulf Oil v. Gilbert,* 330 U.S. at 508.

The level of deference to any plaintiff's choice of forum moves on a "sliding

scale" depending on several considerations.  *See Iragorri*, 274 F.3d at 71.  Specifically,

a plaintiff's choice of forum should receive greater deference where it appears that

there is a genuine connection between the plaintiff, or the lawsuit, and the forum, or that

the plaintiff was sincerely concerned with convenience issues in choosing that forum,

and less deference is warranted when it appears that the choice of forum was

motivated by forum-shopping.  *Id.* at 72.  Other factors that support a plaintiff's choice of

forum include the convenience of the plaintiff's residence in relation to the chosen forum, the availability of witnesses or evidence in the chosen forum, defendant's amenability to suit in the forum district, the availability of appropriate legal assistance, and other reasons relating to convenience or expense.  *Id.*  Alternatively, factors that would decrease the level of deference to the plaintiff's choice of forum include attempts to win a tactical advantage resulting from local laws, generosity of juries in the United States or in the forum district, the litigant's popularity - or their adversaries' unpopularity - in the district, or the inconvenience and expense of defending the suit in that jurisdiction.  *Id.*

In this case, the plaintiffs' choice of forum is accorded substantial deference. Plaintiff is a resident of this district and the office manager and custodian of plaintiffs' business records is located here.  Some witnesses and documents are likewise located in the Western District of New York.  Additionally, plaintiffs have legal and family support in this area.  There is no indication that the choice of this forum is an attempt to win some tactical advantage over the defendants or the result of forum-shopping.

Turning to the issue of the availability of an alternative forum, defendants contend that the case should be litigated in Florida.  Generally, an alternative forum is adequate if (1) the defendants are subject to service of process in that forum and (2) the forum permits litigation of the subject matter of the dispute.  *See Alfadda v. Fenn*, 159 F.3d 41, 45 (2d Cir. 1998).  In this case, there is an alternative forum in Florida. Defendants are amenable to suit in Florida, and plaintiff maintains his business in Florida, as well as New York.  Florida would permit litigation of this contract claim, and there are no other considerations making the forum unsatisfactory.

Having determined the existence of an adequate alternative forum, the court must consider a number of public and private factors relevant to the *forum non conveniens* calculus.  *See Gulf Oil v. Gilbert*, 330 U.S. at 508-09.  Private interests include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to compel the attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (3) the ability to view the premises, if appropriate to the action; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Id.,* at 508.  Public interests include (1) administrative difficulties inherent in bringing a case in a congested docket; (2) imposing jury duty on citizens who have no relation to the litigation; (3) holding the trial within view of the citizens whom the trial might affect; (4) local interest in having localized controversies decided at home; and (5) avoiding conflicts of laws and application of foreign law.  *Id.* at 508-09.

Defendant Charlotte Schickedanz has stated that it would be burdensome to litigate this case in New York.  She contends that the majority of Galten Farms' witnesses are located in Florida and that some of these witnesses are expected to be uncooperative and may be difficult or impossible to bring to New York (Schickedanz Aff. ¶¶ 51-52).  In addition, the investigator that assisted Galten Farms and "will be a prominent witness" is located in Florida, as is the law firm representing the defendants, most of the relevant evidence, and Ms. Schickedanz's family support group.  *Id.,* ¶¶ 54 - 57.  In sum, the defendants argue that litigating this dispute in New York is a financial hardship to Galten Farms and will interfere with the defendants' ability to put forth their case. *Id.,* ¶ 60.

23

Plaintiff's choice of forum is entitled to great deference.  While an alternative forum exists, analysis of the public and private factors do not compel the conclusion that the balance has shifted "strongly in favor of the defendant" so as to supplant the plaintiff's preferred choice of forum.  Documentary evidence will be readily available, even if located in Florida, as modern discovery techniques facilitate remote access to documents.  *See Am. Steamship Owners Mut. Protection and Indem. Ass'n Inc. v. LaFarge North Am., Inc.*, 474 F.Supp.2d 474, 484 (S.D.N.Y. 2007), *aff'd* (599 F.3d 102 (2d Cir. 2010) ("The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents.").  Witnesses will likely be located in Florida, New York, and Ontario, and travel will be costly and inconvenient for all involved.  Plaintiff Independence Farm's attorney is located in New York and would be required to travel to Florida.  Although defendant Schickedanz seeks to try the case in Florida, her primary residence is closer to the Western District of New York than Florida.  It appears that litigation of this case in Florida would simply shift the inconvenience and expense from one party to the other.  Accordingly, it is recommended that the motion to dismiss on the grounds of *forum non conveniens* be DENIED.

## V. Abstention

The defendants seek dismissal of the plaintiffs' complaint in the exercise of the court's inherent power of abstention from parallel litigation.  "Federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress."  *Quackenbush v Allstate Ins. Co.*, 517 U.S. 706, 716 (1996); *Colorado River Water*

*Conservation Dist. v. U. S.*, 424 U.S., 800, 821 (1976).  However, federal courts have the power to refrain from hearing "cases which are duplicative of a pending state proceeding."  *Quackenbush*, 517 U.S. at 717; see *Colorado River*, 424 U.S. at 821; *Pennsylvania v. Williams*, 294 U.S. 176 (1935).

Clearly, the issues raised here and in the Florida action are the same - whether there was a breach of contract and by which party.  However, the existence of a state proceeding involving the same issues is not by itself sufficient to justify dismissal. *Colorado River*, 424 U.S. at 817.  Courts are instructed to consider the following factors: the assumption by either court of jurisdiction over any *res* or property, the inconvenience of the federal forum, the desirability of avoiding piecemeal litigation, and the order in which jurisdiction was obtained by the concurrent forums.  *Id,* at 818. Additionally, the court should consider whether state or federal law supplies the rule of decision and whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction.  *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 23–27 (1983); *Smehlik v. Athletes and Artists, Inc.,* 861 F.Supp. 1162, 1166 (W.D.N.Y. 1994).

Here, the assumption over a *res* is not implicated and the inconvenience of the federal forum does not weigh in favor of abstention.  As was discussed in the context of the defendants' motion to dismiss on the grounds of *forum non conveniens,* litigation of the case in Florida would be inconvenient for plaintiffs.  Likewise, the order in which jurisdiction was obtained does not weigh significantly in favor of abstention.  The two actions appear to have been commenced almost simultaneously, with service of plaintiffs' summons and complaint effected just days before the filing of the complaint in

25

Florida.  The court's interest in the avoidance of piecemeal litigation does not require abstention, as there is generally no bar to proceedings concerning the same subject matter in state and federal courts.  *Smehlik,* 861 F.Supp. at 1167.  Moreover, the possibility of inconsistent rulings on the same contract can be adequately addressed through application of claim preclusion principles.  *See Carter v. 36 Hudson Assoc., LLC,* 2010 WL 2473834, *5 (June 17, 2010).  Additionally, this is a case involving routine issues of state contract law.  Whether the case requires the application of New York or Florida law, the federal district court is fully capable of applying either.  Finally, while the state court in Florida may adequately protect the rights of the plaintiffs in this case, "the possibility that the state court proceeding might adequately protect the interests of the parties is not enough to justify the district court's deference to the state action. This factor, like choice of law, is more important when it weighs in favor of federal jurisdiction."  *Bethlehem Contr. Co. v. Lehrer/McGovern, Inc.*, 800 F.2d 325, 328 (2d Cir. 1986).  In summary, none of the *Colorado River* factors weighs significantly in favor of abstention, and it is therefore recommended that defendant's motion to dismiss on this basis be DENIED.


## VI.  Failure to State a Claim

Finally, defendants argue that the complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) as to Charlotte Schickedanz as there is no basis for individual liability as an officer or director of Galten Farms.  Likewise, they contend that the complaint should be dismissed as against Thomas Nowaskey because he is neither an employee, agent, nor owner of Galten Farms.  Under New York law, a plaintiff may

26

"pierce the corporate veil" and allege individual liability of the corporate owners or officers by showing that: "(1) [the owner] ha[s] exercised such control that the [corporation] has become a mere instrumentality of the [owner], which is the real actor; (2) such control has been used to commit a fraud or other wrong; and (3) the fraud or wrong results in an unjust loss or injury to plaintiff." *Freeman v. Complex Computing Co.,* 119 F.3d 1044, 1052 (2d Cir. 1997) (alterations in original and internal quotation marks omitted); *see also EED Holdings v. Palmer Johnson Acquisition Corp.,* 387 F.Supp.2d 265, 273 (S.D.N.Y. 2004).  New York law also allows piercing of the corporate veil "when the corporation [h]as been so dominated by an individual ... and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own and can be called the other's alter ego."  *Network Enters., Inc. v. APBA Offshore Prods., Inc.*, 2002 WL 31050846, at *3 (S.D.N.Y. September 12, 2002) (internal quotation marks omitted).

In the complaint, plaintiffs have merely alleged that the parties had a long-standing business relationship.  While it may be that the individual defendants are the alter egos of the corporate entity, those facts have not been explicitly pleaded. However, as the complaint was drafted by a *pro se* plaintiff, it is recommended that plaintiff be afforded an opportunity to amend the complaint forthwith to add specific factual allegations so as to allege individual liability of defendants Schickedanz and Nowaskey.  *See Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991) ("court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.").

27

**CONCLUSION**

Based on the foregoing, it is recommended that the defendants' motion to dismiss (Item 22) be DENIED and that plaintiff be afforded the opportunity to file an amended complaint forthwith to add specific factual allegations so as to allege individual liability of Schickedanz and Nowaskey.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED, that this Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance.  *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made

28

and the basis for such objection and shall be supported by legal authority." <u>Failure to</u>

<u>comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of</u>

<u>Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report,</u>

<u>Recommendation and Order), may result in the District Judge's refusal to consider the</u>

<u>objection.</u>

The Clerk is hereby directed to send a copy of this Report,

Recommendation and Order to the attorneys for the parties.


**SO ORDERED.**


DATED:       Buffalo, New York
             June 22, 2012


                                    **S/ H. Kenneth Schroeder, Jr.**
                                    **H. KENNETH SCHROEDER, JR.**
                                    **United States Magistrate Judge**